## COFFEY v. DAY & NIGHT NAT. BANK OF PIKEVILLE.

District Court, E. D. Kentucky. December 7, 1926.

**1. Contracts ⬅147(1)—Contract will be construed to give reasonable meaning and effect to all parts or to give effect to main apparent purpose.**

In construing contracts, court will, if possible, give effect to all parts, and construction giving reasonable meaning to all provisions will be preferred, but, if this is impossible, construction giving effect to main purpose will be favored.

**2. Bills and notes ⬅116—Bill or note must be construed as whole to give effect to every part.**

Bill or note must be construed as a whole to give effect to every part, if possible; contract being collected from four corners of document so that no part is excluded.

**3. Contracts ⬅163—Written and printed matter of contract will be reconciled, if possible, by any reasonable construction.**

Though written part of contract will be given greater effect than printed matter, if there is irreconcilable conflict, written and printed matter will be reconciled, if possible, by any reasonable construction.

**4. Bills and notes ⬅147—Certificate of deposit, payable to "himself order * * * on the return of this certificate properly indorsed," held negotiable (Ky. St. § 3720b1).**

Certificate of deposit, payable to "himself order * * * after date on the return of this certificate properly indorsed," held negotiable under Ky. St. § 3720b1, since word "or" or words "or to his" may be supplied between "himself" and "order."

**5. Bills and notes ⬅342—Plaintiff held holder in due course of certificate of deposit payable to "himself order," as against contention instrument was not complete and regular on face (Ky. St. §§ 3720b1, 3720b8, 3720b10, 3720b17, 3720b52).**

Defendant held holder in due course of certificate of deposit as required by Ky. St. § 3720b52, as against contention that instrument was not complete and regular on face, in view of sections 3720b1, 3720b8, 3720b10, 3720b17, though it was payable to "himself order"; word "or" being omitted.

**6. Bills and notes ⬅155—Certificate of deposit held negotiable, notwithstanding stipulation that bank may require 30 days' notice of time payment will be required.**

Certificate of deposit held negotiable, notwithstanding stipulation that bank may require 30 days' notice of time when payment will be required to meet requirements of Federal Board regarding time deposits.

Action by George W. Coffey against the Day & Night National Bank of Pikeville. On plaintiff's demurrer to the answer, set-off, and counterclaim of the defendant. Demurrer sustained.

Goodykoontz & Slaven, of Williamson, W. Va., and Harry Scherr, of Huntington, W. Va., for plaintiff.

Browning & Reed, of Ashland, Ky., Martin & Smith, of Catlettsburg, Ky., and Johnson, Auxier & Hinton, of Pikesville, Ky., for defendant.

ANDREW M. J. COCHRAN, District Judge. This action is before me on plaintiff's demurrer to the answer, set-off and counterclaim of the defendant. It is brought

on a certificate of deposit issued by the defendant to W. P. T. Varney, and transferred by him to plaintiff for a valuable consideration before maturity. The certificate is in words and figures as follows, to wit:

The answer sets up, by way of set-off, an indebtedness of Varney, the payee, to defendant, in the sum of $5,000, owing to it at the time the certificate became due. The sufficiency of this defense depends on whether this certificate of deposit was negotiable and whether the plaintiff is a holder in due course. By section 3720b1, Kentucky Statutes, in order to the negotiability of an instrument, it is essential amongst other things that it "be payable to the order of a specified person or to bearer." By section 3720b8 it is provided that an instrument is "payable to order where it is drawn payable to the order of a specified person or to him or his order."

The certificate here is not payable to the order of Varney. The question is whether it is payable to him or to his order. Defendant contends that it is not, and that it is payable only to Varney himself. Had the wording been "payable to himself or order," instead of "payable to himself order," the requirement of the statute would have been met. By section 3720b10 it is provided that the instrument "need not follow the language of this act, but any terms are sufficient which clearly indicate an intention to conform to the requirements thereof." If, instead of inserting the word "or" between the words "himself" and "order," the words "or to his" had been inserted, the instrument would have followed the exact language of the statute. The word "order" is not the only indication which the instrument contains that it was intended that it should be negotiable. A further indication is to be found in the words, "on the return of this certificate properly indorsed." These words

contemplate that the instrument may be indorsed by the payee, in which case it must bear the indorsement of such indorsee when presented for payment. In the case of Forrest v. Safety Banking & Trust Co. (C. C.) 174 F. 345, the following instrument was involved.

"No. 1853. Philadelphia, January 2d, 1909 $3,000.00

"Peter F. Fallon has deposited in the Safety Banking & Trust Company three thousand dollars to the credit of himself, payable in current funds on return of this certificate properly indorsed on July 1, 1909. Interest 3½ per cent. per annum.

"H. J. Colver, Cashier.
"H. L. Rock, Secretary.

"This certificate of deposit is not subject to check and is only payable at maturity."

It was held: "The present certificate is in effect payable to Fallon or his order, for this is necessarily implied by the phrase 'properly indorsed.' "

Had the certificate here not contained the word "order," it would still be a question whether, in view of this clause, it should not be construed to be payable to Varney or his order. The defendant has treated the certificate as if it did not contain this clause, "on the return of this certificate properly indorsed." The word "order," as well as this clause, is in print, whereas the word "himself" is in typewriting. Defendant contends that this circumstance calls for the application of subdivision (4) of section 3720b-17, which is in these words:

"Where there is conflict between the written and printed provisions of the instrument, the written provisions prevail."

[1-3] The conflict had in view here is one that exists after the instrument has been properly construed. Before, therefore, the question as to whether there is any such con-

flict can be considered, the certificate involved here must be construed. The rule as to the construction of contracts in general is thus stated in Williston on Contracts, vol. 2, § 619, p. 1199:

"The court will, if possible, give effect to all parts of the instrument, and a construction which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless and inexplicable; and, if this is impossible, a construction which gives effect to the main apparent purpose of the contract will be favored."

The rule applicable in the construction of negotiable instruments is stated thus in 8 C. J., subject "Bills and Notes," § 136, p. 85:

"A bill or note, the same as any other instrument must be construed as a whole, so as to give effect to every part of it, if possible. The contract must be collected from the four corners of the document, and no part of what appears there is to be excluded."

The rule, where there is a possible conflict between written and printed matter in a contract is stated thus in Williston on Contracts, vol. 2, pp. 1205, 1206:

"Of course, if the written and printed matter can by any reasonable construction be reconciled; this will be done."

It is presented thus in Harding v. Cargo of Coal (D. C.) 147 F. 971, 973:

"The principle of construction invoked by the learned counsel for the libelant is resorted to by courts upon questions where there is an irreconcilable conflict between two provisions in a contract; but this method of interpretation is not, and should not be, followed where a reasonable construction may be given, which gives force to every term and provision of the contract, and is, at the same time, consistent with law and with the intention of the parties."

It is presented thus in Gabbert v. Oil Co., 76 W. Va. 718, 86 S. E. 671:

"In the interpretation of a contract, partly printed and partly written or typewritten, as in the use of a printed form, the writing will not be given greater weight than the printing if the one is consistent and reconcilable with the other. It is only where there is irreconcilable repugnance and conflict between the written and the printed portions that the former will prevail over the latter. Both must be given force where they can consistently stand together."

And it is presented thus in Page on Contracts, § 1119 (9 Cyc. 584):

"The one will not be given control over the other if they can possibly be reconciled; it being presumed that the contract contains no provisions or clauses, not intended by the parties."

In the foregoing quotation from Williston on Contracts it is said that, where it is impossible to give effect to all parts of the instrument, "a construction which gives effect to the main apparent purpose of the contract will be favored." To this end he continues:

"Indeed, in giving effect to the general meaning of a writing particular words are sometimes wholly disregarded or supplied. Thus 'or' may be given the meaning of 'and' or vice versa, if the remainder of the agreement shows that a reasonable person in the position of the parties would so understand it. * * * The reason for interpolating, omitting, or disregarding specific words, is that in the remainder of the writing an intention is expressed which makes it evident that particular words were erroneously used."

If such course is justified where effect cannot be given to every part of the instrument, much more is it justified when, by pursuing it, effect can be given to every part. In this connection note should be taken of this further expression of Williston, at page 1203:

"Since one who speaks or writes can by exactness of expression more easily prevent mistakes in meaning than one with whom he is dealing, doubts arising from ambiguity of language are resolved in favor of the latter; and, as he will ordinarily be the promisee of the promise in question, it is sometimes stated that the contract, if ambiguous, will be construed in favor of the promisee."

[4] In view of these several expressions, it must be taken that the word "order" and the clause "on the return of this certificate properly indorsed" cannot be "excluded" or treated as "useless and inexplicable" so as to leave the obligation of the certificate to Varney alone, but should be presumed to have been intended to constitute a part of the undertaking. To this end the word "or" or the words "or to his" should be supplied or interpolated between "himself" and "order." By so doing there is no conflict whatever between the written and printed portions of the instrument, and what we have is a negotiable instrument. Had the provision been that the sum called for should be payable to "himself and to his order," possibly there might be room to say that there was a conflict. In that case the authorities cited seem to justify the substitution of "or" for "and" in order to remove such conflict.

[5] It must be held, therefore, that the instrument in question was negotiable under

section 3720b1, Kentucky Statutes. The defendant contends further that the plaintiff was not a holder in due course, as required by section 3720b52, in that the instrument in question was not "complete and regular on its face," which is the first requirement of that section in order that one may be such a holder. In order to dispose of this contention, it is essential to reach a conclusion as to when an instrument is incomplete or irregular on its face within the meaning of the section. The use of the two words suggests that each expresses a different idea. The decisions in the cases of Re Philpott, 169 Iowa, 555, 151 N. W. 825, Ann. Cas. 1917B, 839, U. R. & L. S. Co. v. S. C. Co., 117 Wash. 347, 201 P. 21, 19 A. L. R. 506, and Remedial Plan, Inc., v. Ott, 199 Ky. 161, 250 S. W. 825, enable one to generalize as to what is essential in order that an instrument may be complete within the requirement of the Negotiable Instruments Act, which was in force in each jurisdiction. In Re Philpott, the note involved provided that it was payable "on or before 4 ——— after date." In U. R. & L. S. Co. v. S. C. Co., the two trade acceptances involved recited one, "on December 1, pay to the order of G. W. Laing"; the order "on November 1 pay to the order of G. W. Laing." In Remedial Plan Co. v. Ott, the note involved provided that it was payable "within ten ——— after date." In each instance the instrument was held nonnegotiable, in that it had no due date. One of the requirements of the act in order to negotiability is that the instrument shall be payable "on demand or at a fixed or determinable future time." In that each of these instruments had no due date it was incomplete. In order, therefore, that an instrument may be complete, it must conform to all the requirements as to negotiability. But it was also irregular in that it was not complete. An incomplete instrument is always an irregular instrument. It is not what it should be. This was recognized by the courts in each of these three cases. In Re Philpott the court said:

"This note was not 'complete and regular' upon its face. It indicated upon its face that some word had been omitted in an attempted specification of the time of payment. * * * We think it quite clear that this irregularity upon the face of the note prevented its taker from becoming a holder in due course. * * * The controlling fact at this point is, not that the blank was not filled, but that it was filled imperfectly or irregularly. Though we grant that the note was presumptively good as a demand note, yet it was

not 'complete and regular' within the requirements of section 3060a52 [Code Supp. 1907], and therefore was not negotiable."

In U. R. & L. S. Co. v. S. C. Co., it was said:

"Were it not for the section of the statute requiring a holder in due course to be one who has taken an instrument complete and regular upon its face, it may be that the instruments here in question would be deemed to be payable on demand, but, where there is an attempt to fix a due date which is not complete, it would seem only reasonable to hold that the instrument is one not complete and regular on its face, and the section of the statute requiring it to be such would prevail."

In the case of Remedial Plan, Inc., v. Ott, it was said:

"As will be observed by a glance at the instrument copied above, the negotiable part thereof begins 'within ten ———.' Probably the parties intended to fill the blank with the word 'months,' but failed to do so. The instrument was therefore incomplete as well as irregular on its face. Being so, appellant was not a holder in due course."

The word "regular" is a broader word than "complete." We have seen that an instrument may be irregular, in that it is incomplete. This, however, does not exhaust the possibilities of irregularity, even though complete. Completeness has reference to the contents of the instruments—its subject-matter. To be complete, it must contain all that is required in order to negotiability. Possibly the requirement of completeness in order to being a holder in due course is tautological; the matter being already covered by what is prescribed in order to negotiability. The other possibilities of irregularity have to do with the verbiage in which the instrument is expressed and with the instrument itself. The latter possibility seems to have been had in mind in this statement in the case of Woolfolk v. Bank, 10 Bush (Ky.) 504:

"If the bill on its face shows * * * material parts of the paper altered, erased, or obliterated and other words supplied, the paper dishonoring itself, the party taking it must make inquiry or abide the loss if it should appear that the bill was mutilated or changed without the consent of the parties to it. Whether such defects appear on the face of the bill is more a question of law than fact, and, when there is nothing on the face of the paper to give such notice, it is not only the province but the duty of the court to refuse to present such an issue to the jury. * * * If the bill is complete, any alteration in a material part without the consent

or authority of the parties to it renders it invalid in the hands of an innocent holder."

The matter is put thus in 8 C. J. subject "Bills and Notes," § 692, p. 512:

"The Negotiable Instruments Law expressly provides that a holder, in order to be a holder in due course, must have taken the instrument when complete and regular on its face. This provision is not altogether clear, but, in so far as it has been construed by the courts, it seems that an instrument comes within it if there is nothing on the face thereof to show that it has been altered or to awaken suspicion, and that the instrument is complete, where it includes all the matters necessary to be contained therein according to the rules laid down by the Negotiable Instruments Law in order to render the instrument negotiable."

Both possibilities of irregularity are suggested in what is said, in continuation of the foregoing:

"As already stated, express notice is not necessary. It may be implied from the face of the paper, * * * or in brief any irregularity, alteration, erasure, ambiguous or uncertain clause * * * may operate as constructive notice to a purchaser taking the same without inquiry, subject to the rule already stated that mere suspicions or fears which would put an ordinarily prudent person on inquiry are not necessarily notice unless amounting to bad faith."

Here an "ambiguous or uncertain clause" is classed with "alteration or erasure," as an irregularity which may prevent one being a holder in due course. What is essential in an irregularity in order that it may have this effect, it is said, in continuance of the foregoing:

"Furthermore, a divergence from the ordinary form will constitute notice only where it naturally and reasonably implies or suggests an equity or defense, and then only the equity suggested."

I come now to apply the conclusions thus reached as to the ideas expressed by these two words to the case in hand. It must be held that the instrument in question, as I have construed it, was complete, and that it was not irregular, in that it was incomplete. Nor was the instrument itself irregular. There was no alteration in it from what it was when it left defendant's hands. If there was any irregularity it was in its verbiage, in that the word "or" or the words "or to his" were omitted between the words "himself" and "order." The Negotiable Instruments Act itself contemplates that there may be irregularities in verbiage which do

not prevent the holder from being a holder in due course. Section 3720b10, heretofore quoted, provides that the instrument need not follow the language of the act and that any terms are sufficient which clearly indicate an intention to conform to the requirements thereof. And section 3720b17, also heretofore quoted, contemplates that there may be a direct conflict between the written and printed provisions, in which case it is provided that the written provision shall prevail, without affecting the holdership in due course of the holder.

Though the word "or" or these words "or to his" are not formally in the certificate, they are as really there as if they were formally. This conclusion was reached when considering the question whether the instrument complies with section 3720b1 and section 3720b8 in being drawn payable to a specified person or his order. Certainly the absence thereof did not naturally and reasonably imply or suggest an equity or defense. What such absence suggested was that it was due to mere oversight. The blanks used contemplated that the certificate should be made negotiable.

My conclusion, therefore, is that plaintiff was a holder in due course.

[6] The defendant urges, as an additional ground in support of its position that the instrument was not negotiable, this sentence therein:

"This bank may require thirty days' notice of the time when payment will be required to meet the requirements of Federal Board regarding time deposits."

It does not urge that it was nonnegotiable because of the clause, "on the return of this certificate properly indorsed."

In 8 C. J. § 245, p. 142, it is said:

"It seems now to be established that a certificate of deposit or the like does not lose its negotiable character by being made payable 'on the return of this certificate.'"

According to the sentence relied on, the defendant had the right to require that, before payment of the certificate could be required, 30 days' notice had to be given. This applied to payment on the due date, and necessitated, if payment was desired at that time, that 30 days' notice be given in advance of the beginning of 30 days before then if such notice had been required. The defendant cites, in support of its contention, the decision in the case of First National Bank v. Golden, 19 Cal. App. 501, 120 P. 498. It was there held that an order drawn by one on his deposit in a Savings Bank was a nonnegotiable chose of action, because, though on its face the deposit was payable on de-

mand, it was a requirement of the bank that the deposit should be not paid till after 30 days' notice to it, and then on condition that the depositor's passbook be presented. The ground of the decision was that there was no unconditional promise to pay, which is essential to the negotiability of an instrument, and not on the ground of uncertainty as to time of payment, which is the basis of the contention here. It was based on the decision in a like case in White v. Cushing, 88 Me. 339, 34 A. 164, 32 L. R. A. 590, 51 Am. St. Rep. 402. It was there said:

"Without these words [the requirement of the presentation of the passbook of the maker of the order] the order is payable absolutely, and there is no apparent uncertainty affecting its negotiability. With them [the words above referred to] the order is payable only upon contingency, or condition. * * * The drawer [depositor] has it in his power to defeat its payment by withholding the bank book."

The question here presented by the sentence relied on is not whether the promise is an unconditional one, but whether there is such uncertainty as to time of payment as to render the certificate nonnegotiable. The plaintiff cites the case of White v. Wadhams, 204 Mich. 381, 170 N. W. 60, as decisive of the question. In that case the certificate of deposit was payable subject to 30 days' notice. It was there said:

"Is the certificate payable at an uncertain time? The rule of the bank with reference to time of payment was as follows: 'Thirty days' notice must, in all cases, be given in writing to the cashier at his banking office, during banking hours, before a depositor will be entitled to withdraw his deposit or any part thereof.' There does not seem to be anything uncertain about this rule. By virtue of its terms the certificate becomes due thirty days after notice in writing given to the cashier. The time is clearly therein fixed, which must inevitably happen, and therefore it complies with the rule laid down in Wilson v. Campbell, 110 Mich. 580, 68 N. W. 278, 35 L. R. A. 544, where it is said, as to the certainty of time required: 'I think it is sufficient if a time be fixed which must inevitably happen.'"

What it was thought would inevitably happen was that the depositor would sometime in the future desire to withdraw his deposit and to this end give the required notice. Conceivably this might never happen. But practically it would. And it would seem that what was had in mind would inevitably happen was thought of from the practical

standpoint. In Clayton v. Gosling, 5 Barn. & C. 360, a note payable twelve months after notice, with lawful interest, was held to be negotiable. It was said:

"There is not any contingency as to the debt for that is admitted to be due. Nor is the time of payment contingent, in the strict sense of the expression; for that means which may or may not arrive; this note was made payable at a time which we must suppose may arrive."

But this case is not exactly like the case of White v. Wadhams. There the giving of the notice was absolutely required. The deposit could in no contingency be withdrawn without the giving of the 30 days' notice. Here the giving of such notice was not absolutely required. It might or might not be required as the defendant determined. And it was not even a practical certainty that the giving of the notice would ever be required. Did this consideration affect the certainty as to time of payment so as to render the certificate nonnegotiable? I think not. It was, absolutely certain—not merely practically so—that the giving of the notice would or would not be required. If required, it was practically certain that it would be given at some time or other. If given 30 days before the due date, the certificate would be payable on that date. If not so given, it would be payable 30 days after it was given. If the giving of the notice was not required, then the certificate would be payable on the date due. Such certainty it seems to me was sufficient to comply with the requirement as to certainty in time of payment in order to its negotiability. In the case of Chicago R. Equipment Co. v. Merchants' Nat. Bank, 136 U. S. 268, 10 S. Ct. 999, 34 L. Ed. 349, it was held that, where twenty-five notes were given for car equipment, payable at successive dates, and there was a provision in them that if any note was not paid when due, at the holder's option, the remaining notes not due should become due, this provision, providing for an acceleration of payment, did not render the notes nonnegotiable. There was the uncertainty whether a given note would be paid when due, and the further uncertainty whether the holder would exercise his option. But it was absolutely certain that either the notes would be paid when due or that they would not be and that the option would or would not be exercised and this certainty was sufficient. It was said:

"It is true that, upon the failure of the maker to pay the principle and interest of any note of the whole series of twenty-five, the others would become due and payable

\* \* \* at the option of the holder. But a contingency under which a note may become due earlier than the date fixed is not one that affects its negotiability."

In the case of Anniston Loan & Trust Co. v. Stickney, 108 Ala. 146, 19 So. 63, 31 L. R. A. 234, it was held that an option indorsed upon the back of a negotiable note for its extension for a definite time by giving a new note at the option of the makers and indorsees, similar to the original, did not destroy its negotiability. It was said:

"The argument is that, as it cannot be known until the maturity of the note, whether the makers and indorsers will exercise the option or privilege of renewal, the payment is contingent. The renewal, or failure to renew, is an event which must necessarily happen, and happen at a precise, fixed day."

And again it was said:

"In Cota v. Buck, 7 Met. [Mass.] 588, 41 Am. Dec. 464, it was said by Shaw, C. J.: 'The true test of the negotiability of a note seems to be whether the undertaking of the promisor is to pay the amount at all events, at some time which must certainly come, and not out of a particular fund or upon a contingent event.' This is the true test of negotiability. If the paper be for the payment of a sum certain, absolutely, at a time which must certainly come, or on an event which must inevitably happen, it is negotiable. It was not payment of the debt, the indorsement contemplates; it was but an extension of the day or time of payment. Not a vague, indefinite extension, the time of which rested in the future negotiation or agreement of the parties, but an extension the duration of which is precisely fixed and declared. If there was not renewal, the note was payable at its maturity. If there was renewal, the time of payment was fixed and certain. Renewal, or the failure to renew, was an event which must inevitably happen."

I am constrained, therefore, to sustain the demurrer.