Catharine D. CAINE et al., Plaintiffs-Appellees,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellant.

No. 14850.

United States Court of Appeals
Sixth Circuit.

Feb. 16, 1963.

Gordon B. Wheeler, Grand Rapids, Mich., for appellant, Uhl, Bryant, Wheeler & Upham, Grand Rapids, Mich., on the brief.

Harold S. Sawyer, Grand Rapids, Mich., for appellees, Warner, Norcross & Judd, Harold S. Sawyer, Charles C. Lundstrom, Grand Rapids, Mich., on the brief.

Before MILLER and O'SULLIVAN, Circuit Judges, and DARR, District Judge.

## O'SULLIVAN, Circuit Judge.

Until his death on July 8, 1956, Louis S. Caine was an executive employee of James Heddon's Sons of Dowagiac, Michigan. As such, his life was insured under a group policy written by appellant, John Hancock Mutual Life Insurance Company. Plaintiffs-appellees, Catharine D. Caine, et al., are the widow, daughter and grandchildren of said Caine and his beneficiaries under the aforesaid group policy. The question involved in this litigation is whether the sum of $100,-000.00 or the sum of $40,000.00 was, under the policy, payable upon Caine's death. Appellant Insurance Company admitted liability for $40,000.00. Suit for $100,000.00 was brought by plaintiffs. The cause was tried to a United States District Judge for the Western District of Michigan, who gave judgment for plaintiffs for $100,000.00, (payable in accordance with the terms of a settlement option). The insurance company appeals.

Murchison Brothers of Dallas, Texas, controlled many enterprises. One of these was Caine's employer, James Heddon's Sons. A trust was formed, called the Mississippi Lamar Insurance Trust, (sometimes referred to as the Insurance Fund), through which group policies were provided for the employees of various Murchison operations. James Heddon's Sons, as well as other Murchison enterprises, by defined methods, became participants (Contributing Employers) in the plan and thereby, through John Hancock Mutual Life Insurance Company, provided various benefits for their respective employees.

The Murchisons had a practice of designating various members of the management personnel of their companies as members of what was called the Executive Council. Entrance into, or departure from, such Executive Council appeared to be a matter wholly within the discretion of the Murchisons. Membership therein was determined by John D. Murchison, one of the Murchison brothers, or by James H. Clark, a senior employee of the Murchison interests. The only direct emolument or perquisite flowing from membership on the Executive Council was a larger life insurance benefit provided for such a member, as distinguished from other classes of employees of the various contributing employers.

The controlling issues of the litigation are: First, whether Caine was, on the date of his death, July 8, 1956, a member of the Executive Council (if he was, $100,000.00 of insurance proceeds were payable to his beneficiaries); Second, if not, did the termination of his membership on such Council give him a conversion privilege which, under the facts of this case and the terms of the policy, entitled his beneficiaries to $100,000.00 insurance; and, Third, whether the District Judge erred in awarding interest, from date of proof of claim, on the $40,-000.00 which defendant admitted owing.

Louis S. Caine was a long-time employee of James Heddon's Sons. From August 1, 1953, to February 28, 1955, he was its president, with an annual salary on the latter date of $30,000.00. On September 28, 1955, he became a vice-president at a reduced salary of $22,-

500.00; on April 24, 1956, as vice-president (at a lower level of authority) his salary was fixed at $13,200.00. Through 1953, 1954 and in 1955, until his resignation as such on April 19, 1956, he was a director of Heddon's. From an original amount of $20,000 (1954) the life insurance provided for each member of the Executive Council was raised to $100,000.00, which was the amount in effect during the months of June and July, 1956, (Caine's death occurred July 8, 1956).

Caine was designated as a member of the Executive Council in 1954. The purpose of appointing an executive to such Council was "to provide him with an incentive to work harder and to stay with the company." Caine continued as an Executive Council member, in all events, until the month of June of 1956. In an office memorandum made on, or just prior to, June 27, 1956, John D. Murchison, by an interlineation thereon, gave direction to strike the name of Louis S. Caine from the list of members of the Executive Council. Advice of such action was given to the then President of James Heddon's Sons by a letter mailed from Dallas, Texas, on June 28, 1956, which said, "We have been instructed by the Management Committee of the Mississippi Lamar Insurance Trust to eliminate Louis S. Caine from the Executive Council. This has been done and you should handle your billing accordingly.[1] Based on the salary set forth in your letter of May 24th, Lou is now entitled to $22,000.00 of insurance." This letter was received by James Heddon's Sons on July 2, 1956. In the forenoon of that day, Louis S. Caine left his office because of illness. He did not return, and died in a hospital six days later on July 8. It was stipulated that he remained in the employ of Heddon's until his death. It was further stipulated that, except for his illness, Caine would, on July 2, 1956,

have been notified of his removal from the Executive Council. He was never so notified, but in making up the July 1 list of Heddon's employees for its current report of insured employees, the amount shown for Caine was reduced on the basis that he was no longer a member of the Executive Council (this list was prepared on July 16, 1956). Between July 2, 1956, and July 8, 1956, a new certificate showing a reduction in Caine's insurance was prepared, but not delivered to Caine. It is stipulated that if Caine was, in fact, a member of the Executive Council at his death, his beneficiaries are entitled to $100,000.00 insurance proceeds. If he was not, and if the termination of such membership gave him a Conversion Privilege, as defined in the insurance contract, plaintiffs would still be entitled to the $100,000.00. This is so because, under such contract, an insured may, within 31 days after the occurrence of the event which accrues the Conversion Privilege, apply for an individual policy in an amount equal to the amount by which his insurance was reduced by such event; and because of the further provision of the policy that if an insured dies within said 31 day period without having applied for such an individual policy, his beneficiaries will, nevertheless, be paid the maximum coverage for which the deceased could have applied plus the amount still payable as group coverage. In Caine's case, termination of his membership in the Executive Council would reduce his group life insurance to $40,000.00 and if that event gave him a Conversion Privilege, he could have, within the 31 day period, applied for an individual policy of $60,000.00, thereby restoring his total coverage to $100,000.00.

1. *Was Louis S. Caine an Executive Council member at the time of his death?*

The District Judge did not answer the above, either as a finding of fact or conclusion of law. He stated that, "* * *

---

1. Under the plan of the Insurance Fund, each Contributing Employer was, each month, to compute the total premium due for the employee insurance then in force and forward a check therefor to the fiscal agent of the Insurance Trust. The fiscal agent, in turn, remitted to John Hancock Mutual Life Insurance Company the total of all premiums due.

[B]ecause of the circumstances surrounding the creation and maintenance of the Executive Council, it is impossible to determine whether or not the decedent, Louis S. Caine, was removed from the Executive Council before his death on July 8, 1956, * * *" He gave judgment for plaintiffs on their alternate position that the insurance contract's Conversion Privilege called for full recovery, even though Caine's membership on the Executive Council had terminated prior to his death. Because we agree with the District Judge in this regard, we assume that Caine was not a member of the Executive Council at the date of his death.

2. *If removed from the Executive Council before his death, did a Conversion Privilege thereby accrue to Caine?*

Under a section of the insurance contract entitled "Conversion Privilege" it is provided:

"A. Any employee, upon written application made to the Company within thirty-one days after the earlier of the following dates:

"(a) the date of termination of his employment, as hereinbefore defined, for any reason whatever, or

"(b) *the date of termination of his membership in the class or classes of employees insured hereunder,* (emphasis supplied)

\* \* \* \* \* \*

shall be entitled to have issued to him by the Company without evidence of insurability, an individual policy of life insurance. * * *"

There follows the method of determining the premium for such an individual policy and the coverage that could be obtained thereby. The same section of the policy, under a heading "Extension of Death Benefit during Conversion Period," provides:

"In the event of the death of the employee during the thirty-one day period within which the employee may make application for an individual policy, as set forth in the foregoing provision, the Company shall pay to the beneficiary as a death benefit the maximum sum for which an individual policy could have been issued under the foregoing provision, whether or not the employee shall have made written application for such individual policy."

Louis Caine's death on July 8, 1956, was within thirty-one days after the termination of his membership on the Executive Council, which if it occurred at all, was accomplished not earlier than June 27th. If such termination can be held to have been a "termination of his membership in the class or classes of employees insured hereunder," as set forth in subparagraph (b) of paragraph A under the Conversion Privilege quoted above, the plaintiffs' judgment must be affirmed.

Under a heading, "LIFE INSURANCE AND ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE," the employees of Heddon's were, for the purpose of defining insurance benefits, divided into three groups, or as we think permissible to say, *into three classes.* SECTION I applied only to members of the Executive Council; SECTION II was applicable only to salesmen; and SECTION III was applicable to all employees other than members of the Executive Council and salesmen. These SECTIONS read, in pertinent part, as follows:

"SECTION I—applicable only to employees who are members of the Executive Council.

"Classification of Employees—all employees.

"SECTION II—Applicable only to salesmen.

"Classification of Employees—Under age 65, all employees.

"SECTION III—Applicable to all employees, except employees who are members of the Executive Council, or salesmen.

"Classification of Employees—Under age 65, by annual earnings. Age 65 and over, all employees."

Under each SECTION there is set forth the amount of life insurance provided for those coming within the class or group therein described. Under SECTIONS II and III, there are subclassifications according to age. The members of the class described in SECTION I were provided the largest and the members of the class described in SECTION III the smallest insurance benefits.

It is clear, then, that under the policy there were established three *classes* of employees with differing insurance benefits. Defendant's contention here concedes that when Caine was removed from the Executive Council, his coverage in *Class* I was terminated and he became a member of *Class* III. Plaintiffs contend that although the literal wording of clause (b) "termination of his membership in the class or classes of employees insured hereunder" may not, with, desirable specificity, describe what happened to Caine, a fair construction of it, in relation to the intent and purpose of the policy, requires a holding that clause (b) applied to Caine's situation. The policy defines many of its terms, but does not define the terms used in clause (b). In its definition section, under a heading "Eligible Class of Employees" it says, "The eligible class of employees shall include all employees of a Contributing Employer. * * * "

Neither in the District Court nor here did defendant take a clear position as to the meaning of clause (b) except to insist that it did not refer to the termination of Caine's membership in *Class* I and his becoming a member of *Class* III. Our own difficulty in making a clearer statement of our understanding of the contract terms involved and the inability of the author of the policy to state, with any degree of clarity, its understanding of the disputed term, supports the District Judge's conclusion that the policy is ambiguous in this regard. We agree with the District Judge.

Defendant argues that because all employees of Heddon's were eligible for insurance and because Caine's removal from Class I did not terminate his membership in "all classes of employees insured hereunder" the event described in clause (b) did not occur. Under this view, since all employees of Heddon's were "insured hereunder" only a complete termination of employee status would bring clause (b) into effect. Such a construction would, however, leave clause (b) without any purpose or meaning, because complete termination of employment is the event described in clause (a), "termination of his employment." Clause (b) follows clause (a) after the disjunctive "or" evidencing the contract's intention that each of these clauses have its own meaning. Out of his travail in examining and analyzing this complex and voluminous insurance contract, the District Judge concluded:

"It appears quite obvious to this Court that the purpose of the policy in question was to extend to the employees the maximum coverage available under the terms of the contract and to permit them, in the event of a reduction of coverage, to convert the difference between the reduced amount and the maximum previously provided. If it were not the purpose to provide for this Conversion Privilege, then the conversion provision would be worthless since it would take effect only upon termination of employment or termination of the policy, and obviously such was not intended when one reads the language of the policy."

We share the quoted view of the District Judge. Clear meaning would be conveyed by clause (b) if its literal words were expanded to read, "the date of termination of his membership in the class of employees in which he is insured hereunder," or "the date of termination of his membership in one of the classes of employees insured hereunder," or some other variant. Under the familiar rule that an ambiguity in an insurance policy will be resolved against the insurer and in favor of the insured, (44 C.J.S. Insurance § 297c, p. 1166; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416; Mutual Life

Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235; Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 312, 48 S.Ct. 512, 72 L.Ed. 895; McNally v. American States Insurance Company, 308 F.2d 438 (CA 6, 1962)), we consider that such rearrangement of the wording of the clause is appropriate. 4 Williston on Contracts (Jaeger Edition, 1961) § 619, pp. 737, 738; Coffey v. Day & Night Nat'l Bank of Pikeville, 21 F.2d 661, aff'd 25 F.2d 403, 58 A.L.R. 1002 (CA 6, 1928). In giving such meaning to the disputed clause, we are satisfied that we neither add to, take away from, nor do violence to the intention of the contract. It is the general rule that "[a] contract of insurance must be construed as a whole, and, if possible and practicable, all of its parts are to be harmonized and *each part given force and effect.*" 44 C.J.S. Insurance § 298, pp. 1196, 1197.

The contract before us provides that it is a Mississippi contract, governed by the laws of that state. The Supreme Court of Mississippi has announced its adherence to the above general rules. Modern Woodmen of America v. Kehoe, 199 Miss. 754, 25 So.2d 463; Murray v. Metropolitan Life Insurance Co., 145 Miss. 266, 110 So. 660; Southern Home Ins. Co. v. Wall, 156 Miss. 865, 127 So. 298; "An insurance policy must be given a practical rather than a literal interpretation. The interpretation must be reasonable and relative and not literal and must be construed favorable to the insured." Locomotive Engineers Mutual Life and Accident Insurance Co. v. Meeks, 157 Miss. 97, 127 So. 699. "Since the appellant insurer, in drafting the policy originally, had it within its power to word it in plain and unambiguous terms, and did not do so, it, and not the beneficiary of the assured, should suffer the result of such obscurity." Modern Woodmen of America v. Kehoe, supra.

■ We are aware that there are some doubts as to the meaning, intent and purpose of the disputed clause, but under the foregoing rules such doubts are resolved against the defendant. Having in mind the contract's ambiguity and the rules of construction controlling here, we obey logic and plausibility, as well as rules of law when we hold that clause (b) should be read so as to have provided Caine with a Conversion Privilege when he terminated membership in the class described in Section I and was thereby placed in Section III.

3. *Was interest properly charged?*

Plaintiffs' complaint asked for $100,-000.00. Defendant's answer denied liability in that amount. It admitted liability for $40,000.00 and stated that "this defendant stands ready to pay said sum of $40,000.00 on the terms and conditions set forth in the Settlement Election and Beneficiary Nomination * * *," and also stated that defendant "admits its liability for, and hereby offers to pay the sum of $40,000.00 in the manner and on the terms and conditions set forth in the Settlement Election and Beneficiary Nomination executed by Louis S. Caine on August 29, 1955. * * *" The settlement election called for immediate payment of one-half of the total insurance to the widow, with the remaining one-half to be paid in monthly installments to be determined according to a recited formula. The defendant, however, paid no money into court. The District Judge allowed interest on the admittedly owing $40,000.00 from the date of proof of claim (the date on which the money was payable) to the date of judgment.

■■ We are of the opinion that the District Judge was justified in allowing such interest. Laws v. New York Life Ins. Co. et al., 81 F.2d 841, 843, 844 (CA 5 1936). While there was no proof that defendant earned any interest on the money withheld, it had the use of such money from the time it should have been paid until judgment was entered. It did not make any offer of judgment as provided by Rule 68, F.R.Civ.P. Its answer did not make it clear that its offer to pay could have been accepted without impairing plaintiffs' claim for the larger amount. It is generally the rule that a tender must be kept good by bringing

the money into court. 86 C.J.S. Tender § 58. See also Mutual Life Insurance Company of New York v. Wells Fargo Bank and Union Trust Co., 86 F.2d 585, 588 (CA 9, 1936); New York Life Ins. Co. v. Calhoun, 114 F.2d 526, 544 (CA 8, 1940), cert. denied, 311 U.S. 701, 61 S.Ct. 141, 85 L.Ed. 455.

Judgment affirmed.