966 F.2d 1454
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nick QASEM, Plaintiff,
v.
QASEM, INC., et al., Defendants-Appellees,
v.
HARLEYSVILLE INSURANCE CO., Defendant-Appellant.
 No. 91-3959.
 United States Court of Appeals, Sixth Circuit.
 June 25, 1992.
 
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This case arises out of a dispute among several claimants to the proceeds due under a fire insurance policy. The dispute was resolved by mutual agreement as to the division of the proceeds, and the parties gave up all further claims with one exception: the insured parties, Hamdi Qasem and Qasem, Inc., (collectively "the Qasems") reserved a claim for interest on the entire amount, and not merely on the portion of the proceeds that went to them. The district court ordered the insurance company to pay the Qasems interest on the entire amount, and the company has appealed to this court.
 
 
 2
 Concluding that the Qasems have no legal or equitable right to interest on more than what was determined to be payable to them, we shall remand the case for an award of interest to the Qasems on that amount only.
 
 
 3
 * In August of 1988 certain real property owned by the Qasems in Cleveland, Ohio, was partially destroyed by fire. The property was insured by the Harleysville Insurance Company. In September of 1988 Harleysville paid Hamdi Qasem $25,000 as an advance on the insurance proceeds.
 
 
 4
 Hamdi's wife, Zohra Qasem, then obtained a temporary restraining order from a domestic relations court prohibiting Harleysville from making any further payment. Nick Qasem, Hamdi's brother, subsequently sued the Qasems, Harleysville, and others in the Common Pleas Court of Cuyahoga County, Ohio. Based on a promissory note, in the amount of $185,000, signed by Hamdi, Nick asserted a claim to the insurance proceeds as the mortgagee of the Qasem's property. Zohra Qasem intervened in Nick Qasem's action.
 
 
 5
 In January of 1989 the Qasems agreed to settle their insurance claim against Harleysville for an additional $167,149.22. Harleysville refused to pay the agreed amount until the state court litigation was resolved. Meanwhile, other parties with claims on the insurance proceeds intervened in the pending proceedings.
 
 
 6
 In September of 1989 Harleysville filed a counterclaim for interpleader and declaratory relief, naming as defendants several other parties with liens on the insured property and potential claims to the insurance proceeds, including the Internal Revenue Service. The counterclaim sought a court order authorizing the company to deposit the insurance proceeds with the court.
 
 
 7
 In October of 1989 the Internal Revenue Service removed the case to the United States District Court for the Northern District of Ohio. Neither the state court nor the federal court ever ruled on Harleysville's request for authorization to deposit the fund in court, and Harleysville held on to the $167,149.22.
 
 
 8
 In January and February of 1991 the court granted summary judgment to two of the claimants, the Internal Revenue Service and L. Charles Auck & Associates. The court ordered Harleysville to pay the IRS and Auck out of the remaining proceeds.
 
 
 9
 The Qasems filed a cross-claim against Harleysville for interest on the insurance proceeds in February of 1991. The following April an order of distribution was issued by agreement of all remaining parties. The order settled the claims against the Qasems and told Harleysville how to distribute "the monies in its possession."
 
 
 10
 Under the terms of the order, Harleysville disbursed only $40,126.45 to the Qasems; the rest of the insurance proceeds went to other claimants. The order stated that all parties to the litigation were discharged "from any further liability or responsibility pertaining to the funds" and with respect to the insurance policy, except that the Qasems' cross-claim for interest was reserved for future disposition.
 
 
 11
 By order dated July 29, 1991, the district court ruled that Harleysville owed the Qasems "the full sum accrued in interest during the pendency of this case." In a subsequent order, filed on September 10, 1991, the court held that the Qasems were entitled to interest at 10% on $167,149.22 from January 12, 1989, the date when the insurance claim was settled, to September 10, 1991. Harleysville has perfected a timely appeal.
 
 II
 
 12
 Harleysville does not dispute that it owes the Qasems interest on the $40,126.45 that was paid to them. The question is whether the Qasems have any legal or equitable right to interest on the $127,022.77 ultimately disbursed to other parties.
 
 
 13
 The Qasems say that the full amount of the insurance settlement should have been distributed to them on January 12, 1989, and they are therefore legally entitled to interest from that day forward. Harleysville denies that the Qasems were entitled to be paid the full amount, citing the existence of liens and other superior claims to the money. The Qasems argue that no such superior interests existed. According to the Qasems, "all of the funds in the possession of Harleysville during the pendency of this case belonged to [the] Qasem[s], even if a portion of the funds were paid to [their] creditors."
 
 
 14
 A necessary corollary of the Qasems' argument is that the other claimants to the insurance proceeds were entitled to look only to the Qasems for payment. The settlement agreement, however, signed by counsel for the Qasems, allowed the other claimants to collect directly from Harleysville. By signing the agreement, the Qasems implicitly acknowledged that the other parties had superior claims to the money.[1]
 
 
 15
 Even if Harleysville had turned the $167,149.22 over to the Qasems on January 12, 1989, the Qasems ought not to have retained any interest on the $127,022.77 they owed to the other parties--for the claims of the other parties all arose prior to that date. The Qasems ought to have paid their debts forthwith, and a failure to do so would have meant that their creditors could look to them for interest on what they owed.
 
 
 16
 The Qasems' creditors may well have been entitled to interest from Harleysville on the sums Harleysville ultimately paid them. See generally Gelfgren v. Republic National Life Ins. Co., 680 F.2d 79 (9th Cir.1982); Bauer v. Uniroyal Tire Co., 630 F.2d 1287 (8th Cir.1980); Powers v. Metropolitan Life Ins. Co., 439 F.2d 605 (D.C.Cir.1971); Caine v. John Hancock Life Ins. Co., 313 F.2d 297 (6th Cir.1963); Laws v. New York Life Ins. Co., 81 F.2d 841, modified, 82 F.2d 811 (5th Cir.1936). Harleysville, however, persuaded the Qasems' creditors to waive their claims for interest. The creditors never assigned their claims for interest to the Qasems, and we see no reason why the Qasems should receive the benefit of what the creditors gave up to Harleysville.
 
 
 17
 Finally, contrary to the Qasems' arguments, there is no evidence of misconduct on the part of Harleysville that would require us to rule against the insurance company on equitable grounds. Harleysville had perfectly legitimate concerns about turning over the disputed insurance proceeds to the Qasems, and it filed a claim for interpleader within a reasonable time.
 
 
 18
 We VACATE the final order of the district court and REMAND the case with instructions to award the Qasems interest on $40,126.45 from January 12, 1989.
 
 
 19
 CHARLES W. JOINER, Senior District Judge, dissenting.
 
 
 20
 I think that the Qasems are entitled to interest on the entire amount with the exception of the amount owed to the Internal Revenue Service from January 31, 1991.
 
 
 21
 My reason for this conclusion is simple. All of the money owed by Harleysville was owed by Harleysville to the Qasems. Harleysville owed no money to the other claimants except through their claims against the Qasems. The money ultimately paid to the other claimants was the Qasems' money. There was no direct obligation of Harleysville to any of the other claimants. When these other claimants' debts were settled, whatever remained was to be paid to the Qasems. Had the Qasems the necessary funds to pay off their debts to the other claimants, independent of the insurance proceeds, all of the insurance money would have been paid to the Qasems; and, under the theory of the majority opinion, interest would be due on all of the money. I can see no just reason to provide a different solution when the parties in a settlement agreement directed that a debt of the Qasems was to be paid directly by Harleysville. It was the Qasems' money that was withheld. If interest on any of it is due, it is due on all of it.
 
 
 22
 The statement in the majority opinion, "[b]y signing the [settlement agreement for distribution of insurance proceeds], the Qasems implicitly acknowledged that the other parties had superior claims to the money" (footnote omitted), seems to me to be utterly without foundation. All they were doing at the time was providing an economical, effective, and sure way of settling their debts to these third persons with money that was due them.
 
 
 23
 The claim of the IRS is somewhat different. The law provides that upon notice of levy by the IRS a direct debt of the custodians is incurred to the IRS in the amount due the IRS. Harleysville's obligation is not to the creditors but is to the IRS. In this case, the amount due under the levy was determined to be $39,550.24 as of January 31, 1991. Harleysville held this amount for the IRS and not the Qasems.
 
 
 24
 Therefore, I would affirm as to all but the interest on the amount due the IRS.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 It is also worth noting that the district court, in granting summary judgment for the Internal Revenue Service and L. Charles Auck & Associates, implicitly held that they had a superior claim to their portions of the insurance proceeds